Good morning. Good morning, and may it please the Court, I am James Laughlin, and I represent the Appellant Philip Caldwell. With the Court's permission, I'd like to reserve three minutes of my time to regard it. Mr. Caldwell raises several issues, including challenges to both counts of conviction on the basis of insufficient evidence. The first count presents two legal issues of first impression dealing with 18 U.S.C. section 2422B and California Penal Code section 288A. In order to uphold Mr. Caldwell's conviction, the Court must conclude that his conduct violated both of these statutes. The Court can therefore begin its analysis with either statute. I'd like to start by talking about section 2422B. And for purposes of this part of the discussion, I'll assume that the conduct at issue here, sending instant messages to a 12-year-old encouraging her to masturbate in the privacy of her own bedroom, does violate 288A. But that's not enough to sustain Mr. Caldwell's conviction under the federal statute. Section 2422B prohibits using the Internet to knowingly persuade, induce, entice, or coerce a minor to engage in any sexual activity for which any person can be held guilty of a criminal offense. As this Court recognized in Meek, the plain language of the statute requires the inducement to be for the purpose of engaging in sexual conduct that is, by its own definition, criminal. In other words, there must be some potential for criminal liability before the inducement is taken into account. For example, sex with an adult and a minor is illegal. The adult can be prosecuted for it. Therefore, if an adult gets on the Internet and tries to convince a minor to meet with him and have sex, that would be criminal activity if it took place. And therefore, the person can be charged under 2224B because he induced something that was by itself criminal. That's been the typical scenario in which this case has been applied. Here, the government tries to push 2242B into new territory. The government doesn't and can't dispute that the underlying criminal activity, masturbation in the privacy of a minor's own bedroom, is, by its own terms, legal. If a 12-year-old ---- Kennedy, even at the instance of an adult stranger, for that stranger's own gratification? Well, for the purposes here, I will assume that that may violate 288A. But the problem is that under 2242B, the inducement can't be what makes the underlying sexual activity illegal. The inducement has to be to induce sexual activity that, by its own terms, is illegal. And that's what the problem we have with the government's theory, is that it's trying to use the same thing twice to basically say the inducement is what makes the sexual activity illegal. And therefore, he can be charged with, under the Federal statute, for inducing that. It's like saying he was being charged with inducing shy Jessica to induce her to masturbate, which makes no sense legally or logically. And I don't think that the statute can fairly be read in that way. I think what the Court did in Meek is the right way to do it. The sexual activity issue has to be, by its own terms, illegal before any inducement is taken into account. And I think when the Court looks at that, I think that the rule of lenity becomes very important in this case. As the Court knows, that requires the Court to give Mr. Calvo the benefit of any doubt in interpreting the statute. As I said, I think the plain language, particularly when read in a view of Meek, does support Mr. Calvo's position. But to the extent the government tries to lead the Court down a path where its alternative I may not want to overstate this. What do you mean, the Court's attempts to lead the Court down a path? I don't quite know what you mean. Okay. Well, I'm sorry to phrase it that way. To the extent the government offers an interpretation that it believes Maybe I misunderstood you, but it says to me we're trying to lead the Court to a wrong result or something of the sort. Well, I didn't mean Go ahead. I do believe that that's I didn't mean it as an intentional misleading. But anyway, what I meant was the government's interpretation of this statute, even when viewed in its best light, is only offering an alternative, plausible interpretation of Section 2242B. I don't think it's really plausible, but if you buy the argument, maybe it's plausible. And there you have two conflicting, plausible interpretations. Mr. Calvo has to be given the benefit of that doubt. So if it's all right, I'll turn briefly to Section 288A, because as I said Well, before you leave, would you explain your best argument and why the government's argument on construction, which is, in effect, it can be behavior by any other person, is incorrect. I want to make sure I understand that. I'm having trouble understanding your question, that it's behavior by It seems to me that where you really differ here is the government says plain word construction of B would allow that sexual or criminal activity to apply to the person on the other end of the Internet, and that it isn't the conduct in the bedroom which needs to be criminal. It needs to have some connection to criminal activity. Is MEEC your best argument in response to that? MEEC and the plain language. I think MEEC was interpreting the plain language. And I think that the problem the government runs into is the only way it can make its prosecution work is to use the inducement to satisfy two separate elements of 2242B, which I think runs afoul of the rule of statutory construction, which says you shouldn't read out an element in a statute to be superfluous. But why is it superfluous? I mean, it seems to me it goes back to Judge Silverman's question. If we concede to you that this 12-year-old girl in her bedroom engaging in manipulation, that's not criminal. But the statute says someone who's calling her up and says, I want you to do this, I'm going to teach you how to do this, which conduct is criminal, satisfies that requirement in B. But the problem is, and I think that the structure of 2242B doesn't evidence a congressional intent to reach a situation where you have speech, an inducement, which makes the underlying sexual activity illegal, but is also the inducement that gets you to satisfy the first element of 2242B. I think that the most rational way to read that is Congress was interested in prohibiting an adult from getting on the Internet and inducing a minor to do activity which was in and of itself illegal. And I think, as I pointed out in the brief, I think that once you start getting too far away from that, once you start getting into stuff that's purely based on speech, you have some constitutional issues that the court also needs to consider as it interprets the statute. But I do think that the plain language is all the court needs to adopt Mr. Caldwell's interpretation. Well, your constitutional argument is that it's void for vagueness, as I read it. Is that correct? Yes, and there's also an over-breath change. What's vague about criminal conduct? I mean, it says that if you are committing criminal conduct, then you're going to be liable under the statute. What's vague about that? Well, I think what's vague about it in the context of the statute is there's nothing in this statute which suggests that inducing somebody to engage in sexual activity, which but for the inducement would not be illegal, is a violation of the statute. Therefore, somebody in Mr. Caldwell's position wouldn't have fair notice that his activity would be prohibited under here because I think that, as I said, at best the government offers an equally plausible or somewhat plausible interpretation, but it's certainly ambiguous. Do you think a reasonable person would think that an adult can contact a 12-year-old girl and ask her to masturbate for the adult's sexual gratification and would think that that's legal? I don't think that the – somebody may have suspect that there is some illegality in that. I think that the question is would somebody having the benefit of this statute think that their conduct falls under this statute. As I said, when we're talking about 2242B, I'm assuming that the conduct violates 2228. I have other arguments, of course, that I don't think violates that either. But let's assume for the moment that Mr. Caldwell could have been prosecuted in California State Court under 2288A. The separate question of whether this statute is ambiguous and gives somebody like Caldwell a proper notice that he could be found liable for engaging in that activity Federally, I don't think that this statute gives that kind of notice. I'm troubled by that, Caps. Isn't it – Mr. Caldwell at this point had asked sufficient questions to know that shy Jessica was pretending to be 12 years old. So it seems to me it goes back to the question you were just asked. Is it reasonable to assume that an adult who is on the Internet knowing that he's talking to a 12-year-old and is encouraging her to masturbate for he knows his sexual gratification, he does not believe that's illegal? Is your position? I don't think that that's necessary. I think we are, because as I point out with the arguments with 2288A, both of these statutes the government is pushing far further than they've ever been pushed before. And you do get into a weird situation. And first of all, I'm not denying that you look at these chat transcripts and it feels very creepy. But all creepiness is not illegal. And all that happened in these chat transcripts is a discussion where one person, an adult, and an adult person, a poor-minded adult, was trying to convince, but not coercing, not pressuring, just saying, hey, you should try this. It's good. And I think you do get into a situation where a lot of people would say, is that illegal? Because as I pointed out in my papers, you get to the point of if that's illegal, then we're running into problems where parents, teachers, health care workers, they might be charged under this statute. What other people would think? What did he think? Do you think he thought it was illegal? We have his testimony. We have his statement to her on the telephone. Does that statement suggest that he thought what he was doing was illegal? Well, he didn't testify. I didn't testify. He was talking to somebody who was recording what he said. No, he was engaging in text messages. He never talked oral on the phone. He was engaging in text messages. He never said anything in those. Regardless of how and what, I'm asking you, was there anything that he did that indicated that he thought what he was doing might be illegal? I don't think so. I think that, I mean, there's nothing I recall from the chat transfers that say anything like, you know, this is illegal. Oh, I don't think so. It was illegal. I'm saying, did he say anything that suggested that he thought his conduct was illegal? Nothing that I can recall in those chat transfers. Look at it when you get back to your... You said you wanted to reserve three minutes, and you're at three minutes. Yes, although if I could just, if I could take two minutes, take one minute to talk about County 2, because I think it's really important. Hopefully the Court has had the chance to look at the images at trial exhibits 7 through 10. What we have here are extreme close-up shots of a minor's vagina, and I think that they are just simply not child pornography. Well, there's more on the picture than just that, or his little comments. Well, but actually that, I think, supports our argument, which is that it's a clinical kind of thing like you would see in the extra record. We have a picture from a medical book. He was using it as a clinical aid, instructing about anatomy. He wasn't sending this picture saying, hey, look how sexy this is. It was like, here, let me point out some anatomy. This is how you can masturbate, and here are the instructions. Right, but I think that for the purposes of looking at County 2 and whether it's child pornography, the issue, you look at the four corners of the picture. When we look at the context, I mean, this was not a medical textbook. It was an Internet sent to a child, or what he thought was a child, with instructions on what she should do with it. I've never seen, I mean, the Court has endorsed the DOS factors and several other factors. I've never seen anything that suggests the Court goes beyond looking at the picture itself to how it was used. But I argue even if he did go to that level, the fact that he is using it as an anatomical aid actually supports his position that it is not lascivious, that it is clinical. I see I'm running out of time. Thank you very much. Good morning. Good morning. May it please the Court, I'm Matt Owen for the United States. I'd like to begin, if I may, just briefly where counsel left off about Count 2, and I imagine transferring quickly to Count 1. But I just wanted to call the Court's attention to the fact that Exhibit 7 filed under seal in our supplemental excerpts of record. It not only shows the caption on the picture and a focused image of the child's genital region, but it also displays the pose in which the child was photographed. This Court said in the Wiegand case that an unnatural pose is a sufficient reason for thinking that an image is lascivious, and of course that is one of the factors this Court approved in Arden for instructing a jury about how to decide in their common sense judgment whether an image is lascivious. And the Court applied that instruction properly in this case. The last thing I wanted to say about Count 2 is that, of course, the question is not whether this Court thinks the images are lascivious or how Your Honors would vote on the jury, but rather whether after drawing every reasonable inference in favor of the jury's verdict, the jury's determination that these images were lascivious and not a clinical image from a medical textbook was irrational. And, of course, for the reasons we've laid out up brief, we think it was not. That said, I'll turn now to the principal argument. Section 2422B, of course, criminalizes any attempt to entice, induce, coerce, or persuade a minor to engage in Congress-called any sexual activity for which any person can be charged with a criminal offense. Now, it is the linchpin, as I understand it, Mr. Caldwell's argument, that the sexual activity in question here is lawful because that sexual activity is the masturbation of a child in the privacy of her own home. But that is not the relevant sexual activity. That sexual activity is criminal because of a state law which prohibits the lewd or lascivious act upon the body of a child. The state courts, California appellate courts, have interpreted that statute to comprise causing the touching of a child, of her own person, by the defendant's instigation. That, of course, tracks the language of California's model jury instruction, the holdings and jury instructions affirmed in several cases in the California Courts of Appeals. Without any hint, I should add, of coercion or, as Mr. Caldwell sometimes describes it, inherent coercion in the language, holdings, or rationales of those opinions. So for that reason, the federal statute refers not to inducing a child to induce masturbation, but rather inducing a child to engage in sexual activity that, had it been a real child and she had really performed it, someone, here the defendant, could have been charged for a criminal offense. And, of course, that offense is the touching, not the masturbation, but the defendant's causing a touching of a child for a lewd purpose. Along those lines, the other sort of argument advanced this morning is a constitutional argument based on vagueness. I wanted to say a couple of things about that. First, to the extent that Mr. Caldwell's vagueness argument is directed to the federal statute, this Court has previously rejected the argument in the Meek and Dinger case that the words of the federal statute are vague on the face that they have an ordinary and readily understandable meaning. If, on the other hand, his allegation is that it is the California statute that is vague, an allegation that has not been developed in the briefing in this case, but if that were so, it would be effectively an argument that Mr. Caldwell was not unnoticed, that he could be charged under an instruction approved by the California courts for 30 years. And as Judge Ferris suggested earlier in one of his questions, there is evidence in the transcript, of course, that Mr. Caldwell knew that his specific behavior was unlawful because he advised the child in strong terms not to allow her parents to know what she was up to. Before you leave, it seems to me Meek speaks of the vagueness question. But as I understand Mr. Laughlin's argument in regards to Meek, it also extinguishes your contention that the conduct can be from someone other than the under 18-year-old as defined in the statute. How do you respond to that? Well, Judge Robart, that is, of course, the way Mr. Caldwell reads the Meek case, because it says that the sexual activity in question has to be by its own definition criminal. Well, doesn't Meek say that also? Well, Meek does use that phrase. And as we pointed in our brief, lots of appellate courts have used a similar sort of shorthand for the statutory text. But what controls, of course, is the plain language of the statute. It says any sexual activity for which any person can be charged with a criminal offense. There is no inconsistency between that definition and Meek's paraphrase that the sexual activity has to be criminal by its own definition. Now, usually in a crime against a person, there's a perpetrator and there's a victim. And the victim is almost never criminally liable for that activity. The imputed touching, a lewd touching upon the body of a 12-year-old girl in California is criminal by its own definition because it was caused, as the jury found here, at the instigation of the defendant for the purpose of gratifying an adult or for the purpose of gratifying the child. So we don't think, I mean, so for example, in the Meek case, as we pointed out, the defendant attempted to lure a child into traveling to have sex with him. Had the child been real and had really done that, of course, the child would not have committed a crime. But that doesn't mean that the underlying activity was not by its own definition criminal because the defendant could be charged with statutory rape for that offense. If the court has no further questions, then the government urges that the district court's rulings are correct and its judgment should be affirmed. Thank you very much. Mr. Loughlin, you've got about a minute and a half. Thank you. I'd just like to address three points on the issue of count two raised by the government. Again, the court is aware of the DOS factors and several factors that come into play in analyzing these kind of images. The government tries to pick a couple out and says that's enough. One, they talk about the pose. Well, the pose, there's such an extreme close-up, you can't tell. There's no real pose in the typical sense of these kinds of cases. It's no different than the pose the court will see in the extra record with the excerpt from the medical book.  The jury, it's basically a jury question whether he's a lascivious or not, and they decided that. Right, and that's the other point I wanted to raise. In addition to the caption which they point to, which I think the caption just says, kindergarten, five years old. That caption just doesn't say hot, sexy or anything that makes it lascivious. It just says this is a five-year-old, and we know that. It's a child. It doesn't add anything to the analysis. But the point about the jury question I think is important because, of course, this court looks at the evidence in the light most favorable to the government because it does defer the jury. But it still has the constitutional role to reverse conviction where the jury convicts where there isn't sufficient evidence. And I think that's very important here because we are talking about child pornography. All people, particularly lay people, justifiably have a visceral reaction to child pornography. And for the people who sit on juries, this is probably the first time they're being shown images of anything like this and being told by the government in court, we think this is child pornography. And I think it's very hard for them to look objectively at things like that, particularly in a case here where the jury also learned about this other chat thing with Mr. Caldwell being involved with a minor. And it also saw an unrelated, uncharged image of undisputed child pornography. So I think the court has to particularly look closely at this case because by virtue of our jobs, we've all seen real child pornography. And I think, therefore, this court is in the best position, in the words of Justice Stewart, to know it when it sees it. And I hope that the court can look at these and say, this just doesn't cross the threshold into child pornography and reverse conviction. Does it matter, again, how we look at it or how your client looked at it? And not your client's. Well, he is your client. No, I think it's an objective standard. I think the court has to look at the picture and say, given the relevant factors, is this child pornography? I don't think, for example, somebody with purient interests about children. This record shows what your client did and what he thought, doesn't it? Well, as I said, I don't think the court should go there. But if the court goes there, I think that the only thing the record says about what my client thought about this was it was used as an anatomical example. It would be no different than if he had cut it out of a medical book or if it was a sketch from a high school health book. So it doesn't show he didn't have it. In fact, I think in the transcript, Jessica asks, well, who is this girl? How old is she? I don't know who she is or how old she is. But here, here's what I want to show you. So he didn't – it's a separate question from how he was using it to count one commission. But there's nothing that said he thought that was lascivious and certainly wasn't used in a lascivious manner. Thank you very much. Thank you. Mr. Owen, thank you, too. The case is disbarred. You just submitted. Good morning.
judges: Robart, Farris, Silverman